United States District Court
Southern District of Texas

**ENTERED**

October 21, 2015

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| STANDARD INNOVATION CORPORATION, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | |
| § | |
| LELOI AB; LELO INC.; LELO § | CIVIL ACTION NO. H-11-4172 |
| (SHANGHAI) TRADING CO., LTD.; § | |
| SUZHOU ARMOCON TECHNOLOGY CO., § | |
| LTD.; 1960 NOVELTIES, INC. § | |
| d/b/a CINDIE'S; and SLS § | |
| SPECIALTY LLC, § | |
| § | |
| Defendants. § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Standard Innovation Corporation ("Standard Innovation") filed this patent infringement suit on December 2, 2011, naming LELO Inc. and LELOi AB (collectively, "LELO") as defendants.[1]  Standard Innovation is a Canadian corporation with its principal place of business in Ottawa, Canada.[2]  LELO Inc. is a California corporation with its principal place of business in San Jose, California.[3]  LELOi AB is a Swedish corporation with its principal place of business in Stockholm, Sweden.[4]  Pending before

---

[1]See Original Complaint for Patent Infringement ("Original Complaint"), Docket Entry No. 1.

[2]See Original Complaint, Docket Entry No. 1, p. 1 ¶ 1.

[3]See LELO, Inc.'s Answer to Complaint, Docket Entry No. 44, pp. 1-2 ¶ 3.

[4]See id., p. 1 ¶ 2.

the court is Defendants LELO Inc. and LELOi AB's Motion to Transfer
(the "Motion to Transfer") (Docket Entry No. 57).  For the reasons
explained below, the Motion to Transfer will be granted, and this
action will be transferred to the Northern District of California
pursuant to 28 U.S.C. § 1404(a).

## I.  Factual and Procedural Background

Standard Innovation filed its Original Complaint in this
patent infringement case on the same day that it filed a complaint
with the U.S. International Trade Commission ("USITC") involving
the same patent, U.S. Patent No. 7,931,605 (the "605 Patent").[5]
This action was stayed while the USITC proceeding was pending.[6]
After the parties advised the court that a stay was no longer
appropriate, the court lifted the stay and entered an order
scheduling an initial conference.[7]  LELO Inc. and LELOi AB filed
original answers on August 20, 2015.[8]  Six days later, Standard
Innovation filed its First Amended Complaint for Patent
Infringement ("First Amended Complaint") (Docket Entry No. 48),

---

[5]See Original Complaint, Docket Entry No. 1; Complaint of
Standard Innovation (US) Corp. and Standard Innovation Corporation
Under Section 337 of the Tariff Act of 1930, as Amended ("USITC
Complaint"), Exhibit A to Motion to Transfer, Docket Entry No. 57-
2, p. 60.

[6]See Stay Order, Docket Entry No. 16.

[7]See Order for Conference and Disclosure of Interested
Parties, Docket Entry No. 37.

[8]See LELO, Inc.'s Answer to Complaint, Docket Entry No. 44;
LELOi AB's Answer to Complaint, Docket Entry No. 45.

which added Suzhou Armocon Technology Co., Ltd. ("Suzhou Armocon"),
LELO (Shanghai) Trading Co., Ltd. ("LELO Shanghai"), SLS Specialty
LLC ("SLS"), and 1960 Novelties, Inc. d/b/a Cindie's ("Cindie's").[9]
On September 14, 2015, LELO filed answers to the First Amended
Complaint[10] and the Motion to Transfer.[11]

In this action, Standard Innovation accuses several of LELO's
couples massagers of infringing the 605 Patent.[12]   Standard
Innovation and LELO Inc. are also involved in a different patent
dispute in the Northern District of California (the "California
Action").[13]    There, LELO Inc. accuses Standard Innovation's
products, including We-Vibe couples massagers, of violating its
patent on inductive charging technology in massagers.[14]   Standard

_____

[9]See First Amended Complaint, Docket Entry No. 48, pp. 3-6;
see also Plaintiff Standard Innovation Corp.'s Response in
Opposition to Defendants LELO Inc. and LELOi AB's Motion to
Transfer ("Response in Opposition"), Docket Entry No. 70, p. 9 n.1.

[10]See LELO Inc.'s Answer to First Amended Complaint, Docket
Entry No. 55; LELOi AB's Answer to First Amended Complaint, Docket
Entry No. 56.

[11]See Motion to Transfer, Docket Entry No. 57.

[12]The products include "LELO's Tiani™, the Tiani™ 2, the
Tiani™ 3, the Noa™, the 'Bridal Pleasure Set' (including the Noa™),
the 'Indulge Me Pleasure Set' (also including the Noa™), and the
Mahana™ couples massagers." First Amended Complaint, Docket Entry
No. 48, p. 5 ¶ 7. See also id. at 16-18.

[13]See Declaration of Lauren E. Whittemore in Support of LELO,
Inc. and LELOi AB's Motion to Transfer ("Whittemore Declaration"),
Exhibit 1 to Motion to Transfer, Docket Entry No. 57-1, p. 2 ¶ 8
(referencing LELO, Inc. v. Standard Innovation (US) Corp., et al.,
Civ. No. 3:13-cv-01393-JD (N.D. Cal.)).

[14]See Response in Opposition, Docket Entry No. 70, pp. 6-7.

Innovation's We-Vibe couples massagers are the products that allegedly practice the 605 Patent at issue in this action.[15] LELO Inc. filed the California Action against Standard Innovation and its U.S. subsidiary in 2013.[16] The parties have begun discovery and claim construction disclosures in the California Action.[17]

## II.  Applicable Law

Section 1404(a) allows a district court to transfer a civil action "for the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  The district court examines a number of public and private interest factors in considering a § 1404(a) transfer.  See Wells v. Abe's Boat Rentals Inc., No. H-13-1112, 2014 WL 29590, at *1 (S.D. Tex. Jan. 3, 2014) (quoting Action Indus., Inc. v. U.S. Fidelity & Guar. Co., 258 F.3d 337, 340 (5th Cir. 2004)).  No one factor is given dispositive weight.  See id.  The private-interest factors are:  "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."  In re Volkswagen AG, 371 F.3d 201, 203 (5th Cir.

---

[15]See Motion to Transfer, Docket Entry No. 57, pp. 11-12.

[16]See Response in Opposition, Docket Entry No. 70, p. 6.

[17]See Whittemore Declaration, Exhibit 1 to Motion to Transfer, Docket Entry No. 57-1, p. 2 ¶ 8.

2004) [hereinafter In re Volkswagen I] (citing Piper Aircraft Co. v. Reyno, 102 S. Ct. 252, 258 n.6 (1981)).  The public-interest factors are:  "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law."  In re Volkswagen I, 371 F.3d at 203.  The court must "weigh the relevant factors and decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'"  Atlantic Marine Construction Company, Inc. v. United States Dist. Court for the Western Dist. of Texas, 134 S. Ct. 568, 581 (2013).

The plaintiff's choice of forum must be accorded some weight. See Atlantic Marine, 134 S. Ct. at 581 n.6 (citing Norwood v. Kirkpatrick, 75 S. Ct. 544, 546 (1955)).  Thus, the party seeking the transfer "'must show good cause'" for the transfer.  In re Volkswagen of Am., Inc., 545 F.3d 304, 315 (5th Cir. 2008) [hereinafter In re Volkswagen II] (en banc).  To show good cause in the context of § 1404(a), "a moving party must satisfy the statutory requirements and clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'"  Id. (quoting 28 U.S.C. § 1404(a)).  If the movant "demonstrates that the transferee venue is clearly more convenient"

-5-

than the plaintiff's chosen venue, the district court should grant the transfer. Id.; see also Wells, 2014 WL 29590, at *1.

### III. Analysis

Under 28 U.S.C. § 1404, the preliminary question for the district court is whether the suit could have been filed originally in the destination venue. See Wells, 2014 WL 29590, at *1. LELO Inc. is a California corporation with its principal place of business in San Jose, California, and it sells its products throughout the United States.[18] LELOi AB is a Swedish corporation that sells its products on the internet throughout the United States, including in the Northern District of California.[19] As originally filed, this action could have been brought in the Northern District of California. See 28 U.S.C. §§ 1391(b)-(d), 1400(b).

Generally, the plaintiff's venue choice is accorded deference, but "when [it] files suit outside [its] home forum, the weight accorded to the choice is diminished." Sivertson v. Clinton, No. 3:11-cv-0836-D, 2011 WL 4100958, at *4 (N.D. Tex. Sept. 14, 2011); McCaskey v. Continental Airlines, Inc., 133 F. Supp. 2d 514, 529 (S.D. Tex. 2001) ("[C]lose scrutiny is given to plaintiff's choice of forum when the plaintiff does not live in the judicial

---

[18]See LELO Inc.'s Answer to First Amended Complaint, Docket Entry No. 55, p. 2 ¶ 3.

[19]See id. at 1 ¶ 2; Motion to Transfer, Docket Entry No. 57, p. 21.

district in which plaintiff has filed suit."). Standard Innovation is a Canadian corporation with its principal place of business in Ottawa.[20] Thus, its choice to file in the Southern District of Texas is not entitled to significant weight. See Sivertson, 2011 WL 4100958, at *4; Rimkus Consulting Grp., Inc. v. Balentine, 693 F. Supp. 2d 681, 690 (S.D. Tex. 2010).[21]

**A. The Private-Interest Factors**

   **1.   The Relative Ease of Access to Sources of Proof**

LELO has submitted the affidavits of Pavle Sedic, the president of LELO Inc., and Miroslav Slavic, the Chief Executive Officer of LELOi AB, stating that LELO Inc.'s documents are located

---

[20]See Original Complaint, Docket Entry No. 1, p. 1 ¶ 1.

[21]A plaintiff's choice may also receive less deference where "most of the operative facts occurred outside the district." See Minka Lighting, Inc. v. Trans Globe Imports, Inc., No. 3:02-cv-2538, 2003 WL 21251684, at *1 (N.D. Tex. May 23, 2003) (citing Robertson v. Kiamichi R.R. Co., LLC, 42 F. Supp. 2d 651, 656 (E.D. Tex. 1999). LELO Inc. has ten major distributors in California and only one distributor in Texas. See Declaration of Pavle Sedic in Support of LELO, Inc. and LELOi AB's Motion to Transfer ("Sedic Declaration"), Exhibit 37 to Motion to Transfer, Docket Entry No. 57-37, p. 2. It shipped products to thirty-eight companies in California and fifteen companies in Texas from January to July of 2015, generating ten times more revenue in California than Texas. See id. at 2; see also Defendants LELO Inc. and LELOi AB's Reply in Support of Motion to Transfer ("Reply in Support"), Docket Entry No. 78, pp. 9-10. Some of the infringing product was sold in this district, but most of the operative facts occurred elsewhere. See First Amended Complaint, Docket Entry No. 48, pp. 5-6 ¶¶ 8-9. See also February 3, 2014, SLS Specialty Item List, Exhibit 21 to First Amended Complaint, Docket Entry No. 48-21; Receipt, Exhibit 22 to Docket Entry No. 48-22.

in San Jose[22] and LELOi AB's documents are in Stockholm.[23]  Slavic
also states that the business relationship between LELO Inc. and
LELOi AB will make it easier for LELOi AB to provide its documents
at LELO Inc.'s San Jose headquarters, rather than in Houston.[24]
Relying on Sedic's testimony in the related USITC action, Standard
Innovation argues that there is not a "bulk of documents" in
San Jose,[25] and the "most important evidence in this case" are
LELO's allegedly infringing massagers, which are easily
transported.[26]  Standard Innovation also argues that even if there
were extensive documents, technology makes their location of little
consequence.[27]

        "That access to some sources of proof presents a lesser
inconvenience now than it might have absent recent developments
does not render this factor superfluous."  <u>In re Volkswagen II</u>, 545
F.3d at 316.  The location of LELO's documents is relevant.  "In
patent infringement cases, the bulk of the relevant evidence
usually comes from the accused infringer," and this factor weighs

---

        [22]<u>See</u> Sedic Declaration, Exhibit 37 to Motion to Transfer,
Docket Entry No. 57-37, p. 1 ¶ 5.

        [23]<u>See</u> Declaration of Miroslav Slavic in Support of LELO, Inc.
and LELOi Ab's Motion to Transfer ("Slavic Declaration"),
Exhibit 36 to Motion to Transfer, Docket Entry No. 57-36, p. 2 ¶ 6.

        [24]<u>Id.</u>

        [25]<u>See</u> Response in Opposition, Docket Entry No. 70, pp. 11-13.

        [26]<u>See</u> <u>id.</u> at 11.

        [27]<u>See</u> <u>id.</u> at 13.

in favor of transfer to the location where the defendant's documents are kept.  See In re Genentech, Inc., 566 F.3d 1338, 1345 (Fed. Cir. 2009) (quotations omitted).  Even if most of the documentation is stored digitally, "this does not negate the significance of having trial closer to where [the defendant's] physical documents and employee notebooks are located."  In re Toa Techs., Inc., 543 F. App'x 1006, 1009 (Fed. Cir. 2013).  Standard Innovation does not argue that Texas is more convenient for Standard Innovation to produce evidence.[28]  The location of all of LELO Inc.'s documents in the Northern District of California and the business relationship between LELO Inc. and LELOi AB weigh in favor of transfer.[29]  See id. ("The critical inquiry is relative ease of access, not absolute ease of access.") (quoting In re Radmax, Ltd., 720 F.3d 285, 288 (5th Cir. 2013)).

2.   The Availability of Compulsory Process to Secure the Attendance of Witnesses

Under the Federal Rules of Civil Procedure, a district court may enforce a subpoena issued to a nonparty witness "within the state where the person resides, is employed, or regularly transacts

---

[28]See id. at 11-13.  LELO argues that Standard Innovation's relevant documents are "likely maintained at its Canada headquarters, not in Texas."  Motion to Transfer, Docket Entry No. 57, p. 17 (citing In re Acer America Corp., 626 F.3d 1252, 1256 (Fed. Cir. 2010)).

[29]LELO argues that SLS and Cindie's, as a distributor and retailer, likely have documents that are duplicative of LELO's, or that could be obtained from similarly situated parties located in the Northern District of California.  See Motion to Transfer, Docket Entry No. 57, p. 23.

business in person, if the person . . . would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(B); see In re Volkswagen II, 545 F.3d at 316. Standard Innovation argues that this factor does not weigh in favor of transfer, as "this is not a case where non-party witnesses known to live in the transferee venue are important to establishing essential causation and liability issues."[30] Standard Innovation also argues that SLS, Cindie's, Ms. Cathy Vesey,[31] and "other LELO retailers and customers" are located in the Southern District of Texas and "would actually have key evidence in this case."[32]

Sedic states that LELO has "10 major distributors and retailers" and "well over 100 smaller stores" served by those distributors in California, while LELO's only Texas distributor is SLS.[33] LELO Inc. made shipments to 38 companies in California from January to July of 2015, while it only shipped to 15 companies in Texas.[34] LELO also lists the following potential witnesses:

---

[30]Response in Opposition, Docket Entry No. 70, p. 13 (citing ON Semiconductor Corp. et al. v. Hynix Semiconductor, Inc., et al., No. 6:09-cv-00390, 2010 WL 3855520, at *8 (E.D. Tex. Sept. 30, 2010)).

[31]Ms. Vesey is Standard Innovations' hired private investigator in Texas. See Reply in Support, Docket Entry No. 78, p. 10.

[32]Response in Opposition, Docket Entry No. 70, p. 14.

[33]See Motion to Transfer, Docket Entry No. 57, p. 18; Sedic Declaration, Exhibit 37 to Motion to Transfer, Docket Entry No. 57-37, p. 2 ¶ 7.

[34]Sedic Declaration, Exhibit 37 to Motion to Transfer, Docket Entry No. 57-37, p. 2 ¶ 8; see Motion to Transfer, Docket Entry No. 57, p. 18.

Standard Innovation's counsel for the ex parte reexamination of the
605 Patent (in Houston, but the firm has a California office); the
firm that prosecuted the 605 Patent (located in New Jersey and
New York); "numerous co-defendants" from Standard Innovation's
USITC action (at least four of nineteen are incorporated and
headquartered in California, while none are in Texas); and named
inventors of prior art that LELO intends to assert against the 605
Patent (several listed reside in California).[35]   LELO has identified
potential non-party witnesses subject to compulsory process in
California,[36] and specified how their testimony relates to the
issues in this case.[37]   Besides Ms. Vesey, no third-party witnesses
have been identified in this district.   This factor weighs in favor
of transfer.

------------------------------------

[35]Motion to Transfer, Docket Entry No. 57, pp. 18-19.

[36]See Fed. R. Civ. P. 45(c)(1).

[37]See Motion to Transfer, Docket Entry No. 57, pp. 18-20;
Reply in Support, Docket Entry No. 78, pp. 10-12.  "[T]he testimony
of the attorney who prosecuted a patent is relevant, for example,
to inequitable conduct issues.  Moreover, inventors of prior art,
whom [LELO] specifically identified, possess evidence and may
testify on issues that go to the heart of [LELO's] invalidity
defense. . . . Likewise, the ITC co-defendants from California are
relevant to the issues in this case—SIC would hardly have sued them
for infringing the '605 Patent in the ITC otherwise.  These co-
defendants sold products SIC alleged infringed the '605 Patent and
entered into agreements with SIC to resolve their involvement in
the ITC case.  Discovery as to these issues is relevant and the
location of these co-defendants in California as parties subject to
the subpoena power of the Northern District is therefore relevant
to the transfer analysis."  Reply in Support, Docket Entry No. 78,
pp. 11-12 (internal references omitted).

3.    The Cost of Attendance for Willing Witnesses

"When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." In re Volkswagen I, 371 F.3d at 204-05. Standard Innovation argues that Houston is relatively centrally located between San Francisco, California and Ottawa, Canada.[38] LELO argues that the difference in cost for Standard Innovation is negligible, because Standard Innovation has a business relationship with California (and other states) and regularly travels to the United States to conduct business.[39] Centrality is not one of the Volkswagen factors. See In re Nintendo Co., Ltd., 589 F.3d 1194, 1200 (the district court "improperly substituted its own central proximity for a measure of convenience of the parties, witnesses, and documents"). Even if Houston were central, witnesses from California would incur costs traveling that they would not incur if the case were in California. Witnesses from Canada must incur travel costs to either venue.

Standard Innovation also argues that "Standard Innovation, SLS, and Cindie's would have five to ten party witnesses between them and LELO Inc. would only have one or two party witnesses," but Standard Innovation does not offer support for this assertion.[40]

---

[38]See Response in Opposition, Docket Entry No. 70, p. 17.

[39]See Motion to Transfer, Docket Entry No. 57, pp. 22-23.

[40]See Response in Opposition, Docket Entry No. 70, p. 17.

Standard Innovation argues that lodging costs are lower in Houston than in San Francisco.[41]   But hotel costs can vary, and lodging costs are not determinative in assessing convenience.  See Stone & Webster Const., Inc. v. E-J Elec. Installation Co., No. H-06-2426, 2006 WL 2880453, at *2 (S.D. Tex. Oct. 6, 2006).

LELO argues that the Northern District of California is more convenient because LELO Inc. is headquartered in San Jose, where all but two of its employees live and work.[42]   See id. ("Where, as here, many witnesses live and work in the New York area, the Eastern District of New York is a more convenient forum even if it may be a more expensive forum for witnesses who are not from the northeast.").  LELO argues that it will be easier for LELOi AB witnesses to appear in California because of the business relationship with LELO Inc.[43]   For the same reason, and because California is geographically close to China, the Chinese defendants in Suzhou and Shanghai will be less inconvenienced by traveling to California.[44]   Flights to California are generally cheaper and more frequently available.[45]   LELO's exhibits show no non-stop flights

---

[41]See id. at 18-19; Travelocity Hotel Search, Exhibit 2 to Response in Opposition, Docket Entry No. 70-3.

[42]See Motion to Transfer, Docket Entry No. 57, p. 21; Sedic Declaration, Exhibit 37 to Motion to Transfer, Docket Entry No. 57-37, p. 1 ¶ 3.

[43]See Motion to Transfer, Docket Entry No. 57, p. 21.

[44]See id. at 21-22.

[45]See id. at 22; Expedia Flight Search: Suzhou to Houston, Exhibit R to Motion to Transfer, Docket Entry No. 57-19; Expedia
(continued...)

between Suzhou and Houston or Shanghai and Houston, but direct flights between Shanghai and San Francisco.[46]

Standard Innovation argues that the cost of travel and lodging for its Houston-based trial team as well as costs for local counsel were not anticipated when the suit was filed, and add a significant burden to plaintiff.[47]   Counsel's convenience is not a factor the court considers in the § 1404(a) analysis. <u>See</u> <u>In re Volkswagen I</u>, 371 F.3d at 206; <u>Rosemond v. United Airlines, Inc.</u>, No. H-13-2190, 2014 WL 1338690, at *4 (S.D. Tex. April 2, 2014).   The inconvenience for Standard Innovation's counsel does not weigh against transfer.[48]

---

[45] (...continued)
Flight Search: Shanghai to Houston, Exhibit S to Motion to Transfer, Docket Entry No. 57-20; Expedia Flight Search: Shanghai to San Francisco, Exhibit T to Motion to Transfer, Docket Entry No. 57-21; Expedia Flight Search: Suzhou to San Francisco, Exhibit U to Motion to Transfer Venue, Docket Entry No. 57-22. Standard Innovation challenges LELO's proof regarding air fares and schedules because these can vary.   <u>See</u> Response in Opposition, Docket Entry No. 70, pp. 17-18.

[46] <u>See</u> Expedia Flight Search: Suzhou to Houston, Exhibit R to Motion to Transfer, Docket Entry No. 57-19; Expedia Flight Search: Shanghai to Houston, Exhibit S to Motion to Transfer, Docket Entry No. 57-20; Expedia Flight Search: Shanghai to San Francisco, Exhibit T to Motion to Transfer, Docket Entry No. 57-21; Expedia Flight Search: Suzhou to San Francisco, Exhibit U to Motion to Transfer Venue, Docket Entry No. 57-22.

[47] <u>See</u> Response in Opposition, Docket Entry No. 70, p. 19.

[48] Standard Innovation's counsel also maintains an office in the Northern District of California.   <u>See</u> Osha Liang Website: Locations, Exhibit H to Motion to Transfer, Docket Entry No. 57-9, showing a Silicon Valley office in Santa Clara, California.

LELO also argues that there will be overlap between party witnesses testifying in the California Action and this action.[49] Standard Innovation responds that only LELO Inc. and Standard Innovation are parties to the California Action, and the cases are unrelated and on different schedules.[50]   LELO identifies several members of Standard Innovation's management who will likely testify in both actions, making it more convenient for both cases to be in the Northern District of California.[51]   Although witnesses for SLS and Cindie's will be inconvenienced if the case is transferred,[52] the other parties will either face the same amount of inconvenience or less in the Northern District of California.   This factor weighs in favor of transfer.

4.   <u>All Other Practical Problems That Make Trial of a Case Easy, Expeditious, and Inexpensive</u>

This action is in its early stages, and the court has not "obtained any substantial familiarity with the case that would

---

[49]<u>See</u> Motion to Transfer, Docket Entry No. 57, pp. 23-24.

[50]<u>See</u> Response in Opposition, Docket Entry No. 70, pp. 19-20.

[51]<u>See</u> Motion to Transfer, Docket Entry No. 57, pp. 23-24; Standard Innovation's Management Team, Exhibit Z to Motion to Transfer, Docket Entry No. 57-27, p. 2; Reply in Support, Docket Entry No. 78, pp. 12-13.

[52]Neither SLS nor Cindie's has entered an appearance in this action.   LELO argues that "SLS and Cindie's are not required for [Standard Innovation] to assert its patent against [LELO].   As mere resellers, they have no evidence regarding the design of the accused products, their importation, or their marketing.   But [Standard Innovation] can obtain discovery from SLS and Cindie's as third parties through subpoenas, or [Standard Innovation] can name many similar companies in California that resell LELO products." Motion to Transfer, Docket Entry No. 57, p. 24.

support judicial economy in retaining and trying this suit." <u>See</u>
<u>Sewing v. Stryker Corp.</u>, No. H-10-4818, 2012 WL 3599459, at *3
(S.D. Tex. Aug. 14, 2012); <u>see also Zoltar Satellite Systems, Inc.</u>
<u>v. LG Electronics Mobile Commc'ns Co.</u>, 402 F. Supp. 2d 731, 735-36
(E.D. Tex. 2005).  At a hearing in the California Action, District
Judge James Donato noted:  "I know they're two different patents,
but it's the same parties, it's a single business dispute.  I mean,
it just makes life a lot easier if you get things done in one
forum."[53]  Standard Innovation argues that there is no overlap in
discovery or witnesses,[54] but the California Action involves two of
the same parties and at least one of the same products.[55]  This
factor weighs slightly in favor of transfer.

_____

[53]<u>See</u> Transcript of Proceedings for <u>LELO Inc. v. Standard</u>
<u>Innovation (US) Corp., et al.</u>, No. 13-cv-01393-JD, San Francisco,
California, Wednesday, June 17, 2015, Exhibit G to Motion to
Transfer, Docket Entry No. 57-8, pp. 3-4.

[54]<u>See</u> Response in Opposition, Docket Entry No. 70, pp. 9-11,
21.

[55]<u>See</u> Whittemore Declaration, Exhibit 1 to Motion to Transfer,
Docket Entry No. 57-1, p. 2 ¶ 5.  The We-Vibe, alleged to practice
the 605 Patent, is accused of infringing the patent in the
California Action.  <u>See</u> Response in Opposition, Docket Entry
No. 70, pp. 10-11.  Standard Innovation admits the We-Vibe is
relevant here, although it argues that it "need not prove it has
such a product in order to recover damages." <u>Id.</u>  LELO responds
that Standard Innovation will have to show that its products
practice the 605 Patent to receive the injunction it is seeking in
this case.  <u>See</u> Reply in Support, Docket Entry No. 78, pp. 8-9.

**B.     The Public-Interest Factors**

    1.   <u>The Administrative Difficulties Flowing from Court Congestion</u>

The focus of the first public-interest factor is "'not whether [transfer] will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket.'" <u>Rosemond</u>, 2014 WL 1338690, at *4 (quoting <u>Siragusa v. Arnold</u>, No. 3:12-cv-04497-M, 2013 WL 5462286, at *7 (N.D. Tex. Sept. 16, 2013)).  Standard Innovation notes that more than twice the number of intellectual property cases are filed per year in the Northern District of California than in the Southern District of Texas.[56] The median disposition time is 2.0 years in this district for such cases and 2.7 years in the Northern District of California.[57]  LELO compares the median disposition times for a civil case:  6.9 months in the Southern District of Texas versus 7.9 months in the Northern District of California.[58]  A few months' difference in disposition time is negligible and does not weigh for or against transfer.  <u>See</u> <u>id.</u> at *4; <u>ExpressJet Airlines, Inc. v. RBC Capital Mkts. Corp.</u>, No. 4:09-cv-00992, 2009 WL 2244468, at *12 (S.D. Tex. July 27, 2009).  Also, "speed of disposition of lawsuits without any [forum]

---

[56]<u>See</u> Response in Opposition, Docket Entry No. 70, p. 22.

[57]<u>See</u> <u>id.</u>; 2015 Patent Litigation Study, Exhibit 6 to Response in Opposition, Docket Entry No. 70-7.

[58]<u>See</u> Motion to Transfer,  Docket Entry No. 57, p. 28; U.S. District Court — Judicial Caseload Profile, Exhibit FF to Motion to Transfer, Docket Entry No. 57-33.

connection is not a valid reason for forum shopping." <u>Hanby v.
Shell Oil</u>, 144 F. Supp. 673, 679 (E.D. Tex. 2001) (citations
omitted).  This factor is neutral.

    2.   <u>The Local Interest in Having Localized Interests Decided
          at Home</u>

Standard Innovation states "LELO sells the accused products
not only nationwide, but <u>in this District</u>."[59]  Because the accused
products are sold nationwide, this argument does not favor the
Southern District of Texas over the Northern District of
California.[60]  All but two of LELO Inc.'s employees work in
San Jose, California, and LELOi AB has an ongoing relationship with
LELO Inc.[61]  The USITC proceeding involved 19 defendants besides
LELO Inc. and LELOi AB, including retailers and distributors of the
accused LELO products.[62]  None of them were located in Texas, but

---

[59] <u>See</u> Response in Opposition, Docket Entry No. 70, p. 22.

[60] <u>See</u> First Amended Complaint, Docket Entry No. 48, pp. 5-6,
¶¶ 8-9.  <u>See also</u> Response in Opposition, Docket Entry No. 70,
pp. 8, 14, 17, 23, 24-25.  "LELO has continued to specifically
target others in this [Southern] District [of Texas] with
infringing sales."  <u>Id.</u> at 19.  Standard Innovation provides a
series of three e-mails between Catherine Vesey Edwards and
michael.solomon@lelo.com, with the subject "Becoming a LELO
Retailer."  <u>See</u> e-mails, Exhibit 9 to Response in Opposition,
Docket Entry No. 70-8.

[61] <u>See</u> Sedic Declaration, Exhibit 37 to Motion to Transfer,
Docket Entry No. 57-37, p. 1 ¶ 3; <u>see also</u> Reply in Support, Docket
Entry No. 78, pp. 16-17.

[62] <u>See</u> Motion to Transfer, Docket Entry No. 57, p. 19; USITC
Complaint, Exhibit A to Motion to Transfer, Docket Entry No. 57-2,
pp. 2-4.

several were located in California.[63]   Standard Innovation argues
that the fact that SLS and Cindie's are located in the Southern
District of Texas at least neutralizes this factor.[64]   LELO responds
that SLS and Cindie's are late additions to this case that Standard
Innovation is using in an attempt to hold venue in this less-
convenient forum.[65]   Standard Innovation added SLS and Cindie's by
amended complaint two days after LELO's counsel contacted Standard
Innovation seeking to meet and confer regarding a motion to
transfer.[66]

Section 1404(a) "should be construed to prevent parties who
are opposed to a change of venue from defeating a transfer which,
but for their own deliberate acts or omissions, would be proper,
convenient and just."   Van Dusen v. Barrack, 84 S. Ct. 805, 813
(1964); see In re Hoffman-La Roche Inc., 587 F.3d 1333, 1337 (Fed.
Cir. 2009) (discussing Van Dusen).   In MMB Development Grp. Ltd. v.
Westernbank P.R., the court addressed a Puerto Rican defendant's

---

[63]See USITC Complaint, Exhibit A to Motion to Transfer, Docket
Entry No. 57-2, pp. 2-4.

[64]See Response in Opposition, Docket Entry No. 70, p. 23
(citing Principal Tech. Eng'g, Inc. v. SMI Cos., No. 4:09-cv-00316,
2010 WL 997537, at *5, 8 (E.D. Tex. Feb. 19, 2010)).

[65]See Reply in Support, Docket Entry No. 78, pp. 7, 17-18.  See
also Motion to Transfer, Docket Entry No. 57, pp. 13-15 (citing
In re Microsoft Corp., 630 F.3d 1361, 1364-65 (Fed. Cir. 2011);
In re Zimmer Holdings, Inc., 609 F.3d 1378, 1381 (Fed. Cir. 2010);
Hoffman-LaRoche, 587 F.3d at 1336-37)).

[66]Motion to Transfer, Docket Entry No. 57, p. 14; Whittemore
Declaration, Exhibit 1 to Motion to Transfer, Docket Entry
No. 57-1, ¶ 10.

motion to transfer the action from the Southern District of Texas to the District of Puerto Rico. <u>See</u> <u>MMB Development Grp. Ltd. v.</u> <u>Westernbank P.R.</u>, No. H-08-3731, 2009 WL 2423990, at *1 (S.D. Tex. Aug. 3, 2009). The court found that the second public-interest factor "weigh[ed] heavily in favor of transfer." <u>Id.</u> at *5. The court noted that "[t]his case involves a real estate and financing deal as part of a project to be built in Puerto Rico . . . . and the Plaintiff, though residing in the Southern District of Texas, conducts business and makes investments in Puerto Rico." <u>Id.</u> Because of those facts, the court found that "[t]he connection between this case and the Southern District of Texas is much weaker than its connection with Puerto Rico." <u>Id.</u> In this action Cindie's and SLS each sell one of LELO's allegedly infringing products in this district.[67] The named international defendants have a direct business relationship with LELO Inc., which is headquartered in California and is responsible for importing and distributing the products.[68] More revenue from these sales is

---

[67]<u>See</u> First Amended Complaint, Docket Entry No. 48, pp. 5-6 ¶ 8 ("SLS Specialty operates the website http://www.slsspecialty.com, from which it sells LELO's Noa™ couples massager to customers in this District[.]"); ¶ 9 ("Cindie's sells LELO's Tiani 3™ couples massager to customers in this District."). <u>See also</u> February 3, 2014, SLS Specialty Item List, Exhibit 21 to First Amended Complaint, Docket Entry No. 48-21; Receipt, Exhibit 22 to Docket Entry No. 48-22.

[68]<u>See</u> First Amended Complaint, Docket Entry No. 48, pp. 4-5 ¶ 6 ("On information and belief, LELO Sweden, LELO Inc., LELO Shanghai, and Armocon are all affiliated companies in a coordinated enter-prise engaged together, among other businesses, in the design, (continued...)

generated in California, and more retailers and distributors are located there.[69]  The Northern District of California has a stronger connection to this case.  See id.  This factor weighs in favor of transfer.

> 3.  The Familiarity of the Forum with the Law That Will Govern the Case and the Avoidance of Unnecessary Problems in Conflicts of Laws

The parties agree that the Northern District of California and the Southern District of Texas are equally capable of adjudicating the patent issues in this case.[70]  Federal patent law applies, so there are no conflict of laws issues.  See Two-Way Media LLC v. AT&T Inc., 636 F. Supp. 2d 527, 540 (S.D. Tex. 2009) (citing In re TS Tech, 551 F.3d 1315, 1320 (Fed. Cir. 2009)).  The third and fourth public-interest factors are neutral.

## C.  Conclusion

Weighing the relevant factors, the court finds that the four private factors and one of the public factors weigh in favor of transfer, while the rest are neutral.  Accordingly, LELO has met its burden of showing that the Northern District of California "is

---

[68](...continued)
manufacture, importation, distribution, and sale of intimate lifestyle products.").

[69]See Motion to Transfer, Docket Entry No. 57, p. 18; Sedic Declaration, Exhibit 37 to Motion to Transfer, Docket Entry No. 57-37.

[70]See id. at 30; Response in Opposition, Docket Entry No. 70, p. 23.

clearly more convenient" than this court, and this case will be transferred.  See <u>In re Volkswagen II</u>, 545 F.3d at 315.

### IV.  <u>Conclusions and Order</u>

For the reasons stated above, the court concludes that the Northern District of California is a clearly more convenient venue than this court.  Accordingly, Defendants LELO Inc. and LELOi AB's Motion to Transfer (Docket Entry No. 57) is **GRANTED**, and the action is **TRANSFERRED** to the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1404(a).

**SIGNED** at Houston, Texas, on this 21st day of October, 2015.

SIM LAKE
UNITED STATES DISTRICT JUDGE

-22-